The People v. Lehr.

---

## The People, use of, etc., v. James L. Lehr.

93   505
96   1458
93   505
a196s 361

1. PRACTICE OF MEDICINE—*What is Not, Within the Meaning of the Title of the Act Regulating.*—Where a party was agent for the sale of an article or instrument to be attached to parts of the body, which he advertised would cure many diseases, and he urged people to buy it and try it, but he did not claim to be a physician or to practice medicine, did not examine his patrons or attempt to ascertain or tell them what their diseases were, and did not prescribe or administer drugs or remedies, nor apply the instrument to the bodies of purchasers, *held*, this was not the practice of medicine within the meaning of the title of the act of 1899, regulating the practice of medicine.

2. SAME—*Advertisers Not Within the Act, When.*—The act of 1899, regulating the practice of medicine, does not include those who merely advertise, puff or sell mechanical instruments or devices, though they profess their use will cure human ills.

Debt, for a violation of the medical practice act. Appeal from the Circuit Court of Peoria County; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed February 13, 1901.

JOHN L. LANING and WHITMORE, BARNES & BOULWARE, attorneys for appellant.

L. A. GILMORE, attorney for appellee; FRANK P. BLAIR, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was an action of debt brought before a justice of the peace by the people for the use of the State Board of Health against James L. Lehr, to recover a penalty for a violation of the act of 1899 regulating the practice of medicine. There was no written complaint to show what parts of the statute it was claimed had been violated, and though a bill of particulars was asked for, no ruling upon this motion appears in the record, nor any bill of particulars. Upon a trial in the Circuit Court on appeal from the justice, the jury found for defendant.

A motion for a new trial was denied, and judgment rendered for defendant, from which plaintiff appeals.

Section 7 of the act provides:

" Any person shall be regarded as practicing medicine, within the meaning of this act, who shall treat or profess to treat, operate on or prescribe for, any physical ailment, or any physical injury to, or deformity of another."

Section 8 enacts:

" That any itinerant vender of any drug, nostrum, ointment or appliance of any kind intended for the treatment of diseases or injury, who shall by writing or printing or any other method, profess to the public to cure or treat diseases or deformity by any drug, nostrum or appliance, shall pay a license," etc.

" And such itinerant vender who shall, by writing or printing, or any other method, profess to cure or treat disease or deformity by any drug, nostrum, or appliance, without a license so to do, shall be deemed guilty of a violation of this section."

Section 9 provides a penalty against any person practic-

ing medicine or surgery or treating human ailments in this State without a certificate from the State Board of Health, and against any itinerant vender violating the provisions of section 8.   Other sections require the license or certificate to be based upon an examination of the applicant upon the subjects a knowledge of which is commonly required of candidates for the degree of doctor of medicine by reputable medical colleges in the United States.

Defendant was agent at Peoria for an article named "Oxygenor" or "Perfected Oxygenor King." It is not fully described in the evidence, but was called by some witnesses an instrument and by others a machine, and in the advertisements an instrument or device.   From the proofs and advertisements it appears that it was used by placing one part of the instrument in ice or ice cold water, and attaching another part to the ankle or wrist of the person using it, and sometimes attaching another part to that portion of the body where pain was felt.   It was advertised that by the instrument thus applied oxygen or oxygen gas was introduced into the body, and that the instrument thus applied would cure a large number of diseases named in the advertisements.   Defendant advertised the instrument or machine extensively in Peoria newspapers, in language of extravagant eulogy, as a disease destroyer, and the newest departure in the art of healing, accompanying the advertisements with testimonials to the benefits derived from its use.   Defendant visited several persons in Peoria, and urged them to purchase an instrument, or at least to try it for physical ailments, from which they were suffering.   In a single instance he brought the instrument to the house. Of the witnesses, called by plaintiff, who had used the Oxygenor, one derived no benefit from its use, and all the others testified they were relieved or cured by it.

If the court below improperly sustained objections to certain questions put by plaintiff, the error was cured by an admission made by defendant, and by answers afterward given by the same or other witnesses.   Substantially everything plaintiff sought to prove ultimately went in evidence

either by those or other witnesses, or by the admissions of defendant. No fact proved by plaintiff was controverted by defendant, and there remains in the record no error which has harmed plaintiff in the rulings upon the admission of evidence. The action of the court upon the instructions we approve in the main, but deem it unnecessary to discuss them for reasons appearing further on. The ruling upon one instruction we disapprove, but whether it was reversible error depends upon the further question whether, under the law applicable to the undisputed facts, plaintiff was entitled to a verdict.

The title of the act under which plaintiff sought to recover is, "An act to regulate the practice of medicine in the State of Illinois, and to repeal an act therein named." This title is to be liberally construed in support of any provision in the body of the act reasonably germane to the purpose stated in the title; but the question is forcibly presented whether it can be said that defendant was engaged in the practice of medicine, in any sense which can be legitimately applied to those words. He did not claim to be a physician or to practice medicine. He did not examine patients or the persons upon whom he called or who called upon him, or ascertain by any personal inspection or otherwise from what disease or ailments they were suffering. He did not profess to tell either those at whose houses he called, or those who came to his office, what their ailments or physical troubles were. He did not prescribe or administer drugs or remedies. He did not apply the instrument to the bodies of those who purchased them. He simply urged people to buy, and sold to them if he could, a mechanical appliance or device, which he advertised and said would cure or relieve a large number of diseases, if afflicted people bought them and applied them to their bodies. Is this the practice of medicine?

The question here involved is a broad one. In this age a multitude of appliances are manufactured and sold under advertisements which represent that they will cure or relieve many human ills and diseases. Liver pads, electric

belts for rheumatism, electric batteries, plasters for corns and bunions and pains in the back, trusses for ruptures, abdominal supporters, braces for stooping shoulders, ear drums and trumpets, are common instances. There are many others. Surely the sale of such instruments and appliances, whether in a store or office, or by a vender who goes from door to door, is not the practice of medicine, even if accompanied by printed or oral statements that they will cure all or many diseases. In this case the proof introduced by plaintiff tended to show this device did relieve some physical ailments; but if it be conceded that the article sold was worthless, and the advertisements and representations of defendant false and fraudulent, still it would not follow he had been guilty of practicing medicine in violation of the statute in question. If the public are not sufficiently protected against imposters, it is for the legislature to apply the remedy. The courts ought not to strain the title of this act beyond its natural and obvious meaning in order to punish some misdeed which is not embraced within it. The recommendation and sale of the Oxygenor by plaintiff does not in our opinion come within either the ordinary meaning attached to the words " the practice of medicine," or the definition thereof in section 7 of this act. The meaning of the term " the practice of medicine " is well defined in Smith v. Lane, 24 Hun, 632. The use or sale of an " appliance " is, we hold, only violative of section 8 when it is employed in an attempt to practice medicine or to administer medicine or other remedies as a cure for diseases, without the license required by the act. In the case against Blue Mountain Joe (129 Ill. 370), defendant sold medicines which he professed would cure diseases, and in that respect it is, we think, distinguishable from this case. We do not think the act, as governed by its title, is aimed at or includes those who, without treating or professing to treat diseases, or practicing or professing to practice medicine, or selling or administering medicines or nostrums, merely advertise, puff or sell mechanical instruments and devices of the character here in question.

To require that these shall be sold only by regularly licensed doctors of medicine is practically to prohibit their sale and their use by the public. We do not think any such purpose is expressed by the title of the act.

As the facts were undisputed, whether plaintiff was entitled to recover is a question of law. We are of opinion that the case made by the proofs did not entitle plaintiff to a verdict. Therefore errors in the instructions would not be ground for reversal.

The judgment is therefore affirmed.